1  YURI MIKULKA (SBN 185926)
     *ymikulka@ztllp.com*
2  OLIVIER A. TAILLIEU (SBN 206546)
     *otaillieu@ztllp.com*
3  LAURA D. CASTNER (SBN 172362)
     *lcastner@ztllp.com*
4  SARAH S. BROOKS (SBN 266292)
     *sbrooks@ztllp.com*
5  **ZUBER & TAILLIEU LLP**
   10866 Wilshire Boulevard, Suite 300
6  Los Angeles, California 90024
   Telephone: (310) 807-9700
7  Facsimile: (310) 807-9701

8  Attorneys for
   INNOVATE MEDIA GROUP, LLC

9

10            **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12                          CV10-3866 SVW (JCx)

13  INNOVATE MEDIA GROUP, LLC a          | CASE NO.:
    California limited liability company, |
14                                        | **COMPLAINT FOR:**
15            Plaintiff,                  | **(1) TRADEMARK
                                          | INFRINGEMENT UNDER 15 U.S.C.
16       v.                               | §1114(1)**
17  APPLE INC., a California Corporation; | **(2) FALSE DESIGNATION OF
    and DOES 1-10, inclusive,            | ORIGIN AND UNFAIR
18                                        | COMPETITION UNDER THE
            Defendants.                   | LANHAM ACT, 15 U.S.C. §1125 (A)**
19                                        |
                                          | **(3) UNFAIR COMPETITION IN
20                                        | VIOLATION OF CAL. BUS. AND
                                          | PROF. CODE §17200**
21                                        |
                                          | **(4) TRADEMARK
22                                        | INFRINGEMENT UNDER
                                          | CALIFORNIA COMMON LAW**
23                                        |
                                          | **(5) COMMON LAW INJURY TO
24                                        | BUSINESS REPUTATION; AND**
25                                        | **DEMAND FOR JURY TRIAL**
26
27
28

0100-9999 / 130026.1

                                                        COMPLAINT

1    Plaintiff Innovate Media Group, LLC ("Innovate Media"), by its counsel,

2  Zuber & Taillieu LLP, for its complaint against Defendant Apple Inc. ("Apple")

3  alleges as follows:

## NATURE OF THE ACTION AND RELIEF SOUGHT

5    1.    This action concerns the infringement of Innovate Media's intellectual

6  property rights in and to the registered mark "iAds" (Registration Nos. 3,515,183

7  and 3,515,184) by Apple Inc.

8    2.    Yahoo! Inc. alumni John Cecil co-founded Innovate Media in 2002, to

9  produce online video advertisements for delivery over the web.  Innovate Media

10 combined Mr. Cecil's experience in advertising and marketing, with the online

11 video production expertise provided by co-founder Dave Winters.  Since 2002,

12 Innovate Media's business, located in Costa Mesa, California, has grown to

13 encompass online video spokespeople, online videos, and online ad banners, serving

14 clients throughout the world including in the United States and in Canada.

15   3.    Innovate Media coined the term "iAds" in or about August 2006, to

16 refer to its product and service, which uses video delivery technology to serve live

17 video overlays on websites and other internet applications.  That is, Innovate

18 Media's "iAds" allows websites and advertisers to run videos, video ad banners, and

19 video clips of actors or spokespeople, which integrate with webpage content and

20 engage visitors to the site by directly addressing them.  In connection with the

21 launch of this new product, Innovate Ads, also known as "iAds," was formed as a

22 delivery mechanism for Innovate Media in 2006.  Since 2006, Innovate Ads has

23 introduced several additional cutting-edge video advertising products, including

24 "Online Video Ad Banners" and "Video Snacks."  Numerous customers and

25 potential customers refer to both Innovate Media itself, and to its products, as

26 "iAds."

27   4.    Apple Inc. was formed in 1976 as Apple Computer, Inc.  In 2007 the

28 company removed "Computer" from the name, to reflect its ongoing expansion into

COMPLAINT

1  the consumer electronics market in addition to its traditional focus on personal

2  computers.  From its beginnings, Apple established a unique reputation in the

3  consumer electronics industry as an anti-establishment upstart, and inspired a

4  customer base devoted to the company and the brand.  From its home-workshop

5  beginnings, Apple has now grown to one of the largest technological corporations in

6  the world by revenue, with over $36 billion in sales in 2009.

7       5.     Over the years, Apple has sought and obtained trademark registration

8  for many of its products, including, among others, "MACBOOK" "MACBOOK

9  AIR," "IPHOTO," and "ITUNES."  Apple is famous for vigorously policing and

10  protecting its own intellectual property, and warns visitors to its website that,

11  "Apple actively and aggressively enforces its intellectual property rights to the

12  fullest extent of the law."  Most recently, Apple's aggressive pursuit of a web

13  journalist who published photos of a new iPhone prototype purportedly "lost" by an

14  Apple employee in a bar, has made headlines.

15       6.     On April 8, 2010, Apple's Chief Executive Officer, Steve Jobs,

16  announced at a press conference that Apple will launch "iAd," an advertising

17  platform.  Apple's iAd is for use on applications on Apple's iPhone, iTouch, and

18  iPad products, and potentially on other products, and will generate substantial

19  revenue forApple.

20       7.     After this press conference, Innovate Media contacted Mr. Jobs, and

21  informed him that Innovate Media had trademarked "iAds" in 2008.  Innovate

22  Media also contacted Quattro Wireless, a mobile ad company which Apple recently

23  acquired in connection with its planned "iAd" launch, and informed Quattro

24  Wireless of Innovate Media's rights in and to the "iAds" marks.  Neither Apple nor

25  Quattro Wireless has responded to Innovate Media.  Instead, Apple has continued to

26  use the infringing mark in commerce, including on its website www.apple.com; on

27  www.iadtoday.com, a new website dedicated to providing news and information

28

COMPLAINT

1 | updates on Apple's iAd service; and in connection with its promotional materials for
2 | the upcoming Apple Worldwide Developers Conference.

3 |      8.    It appears that Apple's strategy with respect to Innovate Media and the
4 | "iAds" mark is just another sequence in a pattern of conduct by Apple, of ignoring
5 | and trampling the intellectual property rights of others. "iPhone," "iPad," and even
6 | the name "Apple" were all marks held by third parties, which Apple used without
7 | the owners' permission, and ultimately took over.

8 |      9.    As a result of Apple's refusal to acknowledge Innovate Media's "iAds"
9 | marks, and blatant and willful infringement of those marks, Innovate Media has
10 | been left with no choice but to file this lawsuit seeking injunctive relief, damages
11 | and other relief.

12 | **JURISDICTION AND VENUE**

13 |      10.    These causes of action arise under the provisions of the Lanham Act
14 | (15 U.S.C. §§1051-1127), the law of the State of California, and the common law.

15 |      11.    This Court has original subject matter jurisdiction over Innovate
16 | Media's First, Second and Third Causes of Action, pursuant to 28 U.S.C. §§1331
17 | and 28 U.S.C. §§1338(a) and (b). This Court has supplemental subject matter
18 | jurisdiction over Innovate Media's Third, Fourth and Fifth Causes of Action
19 | pursuant to 28 U.S.C. §1367(a).

20 |      12.    This Court has specific personal jurisdiction over Apple Inc. because it
21 | has purposefully committed, within this District and the State of California, the acts
22 | from which these claims arise and/or has committed tortious acts outside California,
23 | knowing and intending that such acts would cause injury within the state and this
24 | District. This Court also has general personal jurisdiction over Apple because it
25 | conducts continuous, systematic and routine business within the State of California
26 | and the Central District of California.

27

28

COMPLAINT

1    13.    Venue is proper in this district under 28 U.S.C. 1391(b) and (c) because

2  a substantial part of the property that is the subject of this action, *i.e.* Innovate

3  Media's registered trademarks, are situated in this district.

4  **THE PARTIES**

5    14.    Plaintiff Innovate Media Group, LLC is, and at all times mentioned

6  herein was, a limited liability company organized and existing under the laws of the

7  State of California, having a principal place of business at 3199 A-3, Airport Loop

8  Drive, Costa Mesa, CA, 92626.

9    15.    Upon information and belief, Defendant Apple Inc. is, and at all times

10  mentioned herein was, a corporation organized and existing under the laws of the

11  State of California, having a principal place of business at 1 Infinite Loop,

12  Cupertino, California, 95014.

13    16.    Innovate Media is unaware of the true names and capacities of Does 1

14  through 10, inclusive, and therefore sues said defendants by such fictitious names.

15  Innovate Media will ask leave of Court to amend this Complaint to state the true

16  names and capacities of the defendants sued as Does when the same are ascertained.

17  Innovate Media is informed and believes, and based thereon alleges that each of the

18  fictitiously names defendants is responsible in some manner for the actions and

19  occurrences herein alleged, and that Innovate Media's damages, as herein alleged,

20  were proximately caused by their conduct.

21  **INNOVATE MEDIA'S "iAds"**

22    17.    Plaintiff Innovate Media is a full-scale online video production and

23  delivery company that records, produces, and delivers videos for online advertising

24  and marketing.  With its combination of advertising/marketing expertise, and the in-

25  house production capability of its creative team, Innovate Media is able to work

26  with a customer to develop an interactive advertising product from concept to

27  launching it on the web, focus on the human touch, not just technology.  Innovate

28  Media's personnel work with the advertiser to choose the right actor/spokesperson,

1 │ to write the script, create the graphics, shoot the spot in Innovate Media's studios,
2 │ making sure that it meets various standards critical to the internet, and then
3 │ launching it and "serving it" – *i.e.*, hosting it on Innovate Media's servers.

4 │         18.    Innovate Media's advertising products – its "iAds" -- including but not
5 │ limited to video spokespeople, online banner advertisements, and "video snacks",
6 │ are the result of the company's constant efforts to keep up with the latest research
7 │ and trends, and to stay ahead of the curve.  Research shows that when people
8 │ interact with media, especially with computer-based media, the more successful the
9 │ interaction is likely to be more successful.  The actors in these ads convey not only
10 │ information, but emotions, helping to increase and sustain a viewer's trust in the
11 │ material conveyed.

12 │         19.    A key factor in Innovate Media's products, and a major reason for their
13 │ success, is the way they engage the viewer.  For example, Innovate Media's video
14 │ spokespeople "walk out" of a static web page onto the screen, and address the
15 │ viewer.  Innovate Media also creates online video ads, in which a talking person is
16 │ embedded in video banners, buttons, overlays, and portions of a webpage.   Innovate
17 │ Media offers "video snacks," user-activated, short custom video clips that are
18 │ embedded or overlaid on a web page, in which an actor states a brief message about
19 │ the advertised product's value to the viewer.  Finally, Innovate Media's products
20 │ offer the advertiser the ability to relate its product directly to a user's search request,
21 │ addressing and reinforcing the user's search terms as part of the video
22 │ spokesperson's interaction with the user.

23 │         20.    Innovate Media is the leader in producing and delivering video ads that
24 │ interact with and engage the user.  Innovate Media has for years promoted and
25 │ educated the industry on such online video ads as being an extremely effective
26 │ marketing tool because more users actually click on such video messages than the
27 │ typical static online advertising.

28 │

0100-9999 / 130026.1

6

21.   In addition, and significantly, Innovate Media has the ability to provide state of the art metrics to its customers – that is, to track the length of time an online video is viewed; the number of people viewing it; the number of people who stop it; the number of people who "clicked through" to the next screen; and the number or percentage of "conversions," viewers who purchase the product being advertised.

22.   By combining its Internet marketing knowledge, online video production expertise, and the iAds delivery system, Innovate Media has established itself as a leader and innovator in the online video production and delivery marketplace.

23.   Innovate Media announced the launch of iAds on August 5, 2006, in a press release introducing its ability to produce live video overlays on websites and other internet applications, through new video delivery technology, using video spokespersons to enhance pay-per-click campaigns, direct response activities, and online learning.

24.   On September 16, 2008, Innovate Media announced the launch of iAds Online Video Ad Banners, full-motion, broadcast-quality video banners featuring real actors interacting with the advertiser's product, logo or website message, capable of being delivered onto any site for any client.

25.   Thus, Innovate Ads and iAds have worked continuously to maintain their position at the forefront of online advertising technology, which includes testing online mobile advertising. in order to create cutting-edge content for their clients.

26.   Innovate Media has hundreds of clients, which include Fortune 500 companies, small and medium companies, and advertising agencies.  Innovate Media's clients include national (domestic U.S.) corporations, as well as foreign companies including companies in Canada.  Notably, a number of Innovate Media's clients, including several of its national clients, have applications for Apple's iPhone, iTouch and iPad.

27.   Innovate Media displays the mark "iAds" prominently on its three websites, http://www.innovatemedia.com/, http://www.innovateads.com/, and http://www.localclick.com, including in a prominent position on the www.innocateads.com page.  In addition the Iads delivery system can accessed at http://admin.innovateads.com

28.   Innovate Media also uses the mark "iAds" at tradeshows, in brochures, in internet and e-marketing materials, via google AdWords, on promotional video ads, on customer invoices, and in very email that it sends.

29.   On October 25, 2007, Innovate Media filed two trademark applications with the United States Patent and Trademark Office (the "PTO") for its mark "iAds," for production of video and creation of visual effects and graphics for others for use on websites, and for transmission of sound, video and information over the internet using video flash overlay technology.

30.   On October 14, 2008, the PTO approved Innovate Media's trademark applications and issued certificates of registration for the mark "iAds" under Registration Nos. Nos. 3,515,183 and 3,515,184.  True and correct copies of iAds' registrations are attached hereto as Exhibits A and B.

## APPLE'S "iAd"

31.   Until relatively recently, Apple was primarily a manufacturer of personal computers and software.  In recent years, Apple has expanded into consumer audio devices, music distribution, and telephones.

32.   On April 8, 2010, Apple's Chief Executive Officer Steve Jobs publicly announced the launch of its new advertising platform "iAd."  The announcement was made at a press conference where Apple unveiled plans for its highly anticipated new iPhone and what it describes as "the biggest and most exciting iPhone software update yet" -- iPhone OS 4.

1
2
3
4
5
6
7
8
9
10
11
12
13



14    33.    A press release issued by Apple concurrently with the April 8, 2010
15  press conference describes Apple's vision for its "iAd" program:

16          iAd, Apple's new mobile advertising platform, combines the
17          emotion of TV ads with the interactivity of web ads. . . .
18          iPhone OS 4 lets developers easily embed iAd opportunities
19          within their apps, and the ads are dynamically and wirelessly
20          delivered to the device. Apple will sell and serve the ads, and
21          developers will receive an industry-standard 60 percent of iAd
22          revenue.

23    34.    Similarly, Apple's website describes its planned "iAd" application as
24  follows: "With [iAd], apps can feature rich media ads that combine the emotion of
25  TV with the interactivity of the web.  For developers, it means a new, easy-to-
26  implement source of revenue.  For advertisers, it creates a new media outlet that
27  offers consumers highly targeted information."

28

1    35.    At the April 8, 2010 press conference Mr. Jobs emphasized the

2  enormous financial opportunity iAd presents, noting that Apple intends to pay

3  developers 60 percent of iAd revenues, retaining 40 percent for itself, and that iAd

4  can expect to generate "one billion impressions per day." WSJ.com has reported

5  that Apple could charge as much as $10 million to be part of a handful of marketers

6  at the launch.

7    36.    Analysts have reported that Apple can expect its gross profit margin to

8  jump from 30% to 38% with the launch of "iAd." Other recent reports have

9  estimated that Apple can expect to earn billions of dollars annually as a result of the

10 'iAd" advertising platform.

11   37.    There has been extensive media coverage of and commentary following

12 Apple's April 8, 2010 press conference, including of Apple's unveiling of the

13 launch of "iAd." The media coverage and Mr. Jobs himself in his press conference

14 refers to Apple's advertising platform both as "iAd" and as "iAds."

15   38.    Innovate Media is informed and believe that Apple has already begun

16 soliciting advertisers for its "iAd" and that Apple's "iAd" will be available to

17 iPhone users starting in June, 2010 and to iPad users starting in the Fall.

18   39.    Apple is also planning sessions to show developers and others how to

19 integrate "iAd" in applications at the sold-out June 7-11, 2010 Apple Worldwide

20 Developers' Conference, which Apple describes as "the most important annual

21 event for anyone innovating with Apple technologies," and which will be attended

22 by thousands of developers and others around the world to receive in-depth

23 information and instruction from Apple.

## APPLE'S CONDUCT RESULTS IN
## IRREPARABLE HARM TO INNOVATE MEDIA

26   40.    On May 9, 2010, Innovate Media's President, John Cecil, sent Apple's

27 CEO, Steve Jobs, an email informing him that Innovate Media owns the trademarks

28 for "iAds." Apple never responded to this communication.

COMPLAINT

41.   On May 11, 2010, Innovate Media's President also contacted Quattro Wireless, the advertising company purchased by Apple to run Apple's "iAd" application program, informing Quattro Wireless that Innovate Media owns the trademarks for "iAds."  Quattro Wireless likewise did not respond to this or other communications from Innovate Media.

42.   A simple search that can be conducted for free on the PTO's website shows that Innovate Media is the owner of the registered marks "iAds."

43.   Although Innovate Media's "iAds" marks have been in use in commerce for almost four years, and have been registered with the U.S. Patent and Trademark Office for almost two years, at no time before or after the April 8, 2010 press conference did Apple contact Innovate Media to seek a license for the "iAds" marks.

44.   Apple's refusal to recognize or acknowledge Innovate Media's rights in and to its "iAds" marks, and Apple's persistence in its use of the "iAd"/"iAds" marks for Apple's planned mobile advertising launch, amounts to blatant and willful infringement of Innovate Media's valuable intellectual property.

45.   Given the obvious disparity in resources and market power between Apple and Innovate Media, the launch of Apple's "iAd" application will effectively, and immediately, undo Innovate Media's substantial investment of time, energy, and resources since 2002 to build its internet marketing and advertising business, and will completely overtake Innovate Media's use of its "iAds" marks, and the substantial goodwill and reputation those marks have generated due to Innovate Media's efforts.

46.   Both Innovate Media's "iAds" and Apple's "iAd" application provide state of the art interactive advertisements that promote "interaction and emotion" and innovative technology solutions to advertisers.  In other words, Apple's "iAd" and Innovate Media's "iAds" are used for the same thing -- to deliver compelling advertising messages on new media.

0100-9999 / 130026.1

COMPLAINT

47.   Both Innovate Media's "iAds" products and Apple's planned "iAd" products are directed toward the same customer base (new media advertisers) and the same ultimate consumers (new media users), via the same medium and marketing channels.

48.   Innovate Media's clients include Fortune 500 companies such as Canon and Experian.  Similarly, Apple will likely sell its "iAd" advertisements to Fortune 500 companies.

49.   In addition, many of Innovate Media's clients already have applications on Apple's products.  For example, Innovate Media's clients, Real Player, Napster, Symantec, Service Magic, and Legal Zoom all have applications on Apple's products.  It is anticipated that many of these applications will host Apple's "iAd."

50.   Thus, Innovate Media's "iAds" and Apple's "iAd" advertisements will be likely be sold to the same clients.

51.   Innovate Media's "iAds" mark and Apple's "iAd" share the same style, lettering, and sound and are used for the same purpose -- to deliver compelling, interactive advertising messages on new media.

52.   For all of the foregoing reasons, Apple's use of Innovate Media's "iAds" mark is likely to cause confusion, and indeed has already has caused consumer confusion.  Since Apple's April 8, 2010 press conference, Innovate Media has received numerous inquiries regarding whether Innovate Media is now affiliated with Apple, and whether Innovate Media's "iAds" is the same as or different from "Apple's iAds."

53.   Innovate Media will likely continue to receive such inquiries unless and until Apple is enjoined from its wrongful conduct.

54.   Innovate Media seeks injunctive relief enjoining Apple from using the mark "iAd," including but not limited to enjoining the use of the mark on Apple's websites, marketing materials, advertisements of any kind, and at trade shows,

1   conventions, and elsewhere, in connection with goods or services or in any manner
2   whatsoever that would infringe Innovate Media's trademark.

3       55.     As a result of Apple's conduct, Innovate Media has been damaged in an
4   amount not presently ascertained, and such damage will continue and increase
5   unless and until Apple is enjoined from engaging its wrongful conduct.

6       56.     Accordingly, Innovate Media also seeks relief in an amount to be
7   proven for (1) lost revenue; (2) corrective advertising; (3) a reasonable license; and
8   (4) damage to Innovate Media's mark due to Apple's unauthorized use.  Innovate
9   Media also seeks enhanced damages and attorneys' fees and costs, where applicable.

10

11   **APPLE'S PATTERN OF WILLFUL TRADEMARK INFRINGEMENT**

12       57.     This is not the first time that Apple has knowingly and willfully
13   infringed another company's trademark.  In fact, Apple's trademark infringement
14   stretches back to its very formation.  In the 1970s, Apple Corp., the Beatles-founded
15   record label, sued Apple for trademark infringement.  The case settled, but was
16   conditioned upon Apple not entering the music business.  Apple Corp. sued Apple
17   again in the 1990s when Apple nonetheless expanded its business.

18       58.     Similarly, Apple did not own the mark "iPhone" before it publicly
19   announced the launch of its new "iPhone" device.  Cisco Systems, Inc. ("Cisco")
20   was the owner of that mark.  Despite the fact that Apple had been in discussions
21   with Cisco to license its registered "iPhone" trademark, Apple ultimately ignored
22   Cisco's intellectual property rights and publicly announced, without Cisco's
23   permission, Apple's new "iPhone" at a widely publicized press conference.

24       59.     Additionally, Apple filed a trademark application for the mark
25   "iPhone" in a foreign country (Australia), in an effort to claim priority for the mark
26   in the United States.

27       60.     As a result of Apple's conduct, on January 10, 2007, Cisco sued Apple
28   for trademark infringement.

13

COMPLAINT

1    61.    Upon information and belief, Apple has also rolled out the "iPad"

2  product before attempting to license or obtain assignment of the "iPad" mark from

3  Fujitsu Frontech North America, Inc., which had an application for the mark

4  pending with the PTO.

5    62.    Similar to the Cisco "iPhone' dispute, here, Apple publicly announced

6  its new "iAd" program at a widely publicized press conference, notwithstanding

7  Innovate Media's ownership of the "iAds" mark, and has continued to use the mark

8  in commerce despite notices provided by Innovate Media of its rights in the "iAds"

9  mark.

10    63.    In addition, on April 6, 2010, a mere two days before its April 8, 2010

11  press conference, Apple quietly applied for a trademark on the mark "iAd" in

12  Canada.  A true and correct copy of Apple's Canadian trademark application for

13  "iAd" is attached hereto as Exhibit C.

14    64.    Apple's Canadian application broadly asserts a variety of services and

15  wares for its "iAd," many of which encompass Innovate Media's "iAds" business,

16  including "dissemination of advertising for others via computer networks and global

17  communication networks" and various uses "via the Internet and other computer,

18  electronic and communication networks."  See Exhibit C.

19    65.    As evidenced by its dealings in connection with the marks "Apple",

20  "iPhone", "iPad", Apple has repeatedly demonstrated its disregard for and willful

21  infringement of the intellectual property rights of others, and in this case of Innovate

22  Media.

23                    **FIRST CAUSE OF ACTION**

24        **Trademark Infringement in Violation of 15 U.S.C. §1114(1)**

25                         **Against All Defendants**

26    66.    Innovate Media repeats and realleges each and every allegation

27  contained in paragraphs 1 to 65, inclusive, and incorporates them by reference as

28  though fully and completely set forth herein.

0100-9999 / 130026.1

14

COMPLAINT

67.   Innovate Media is the registered owner of the mark "iAds."

68.   Defendants' use of the mark "iAd" is an infringement of Innovate Media's registered trademarks in violation of 15 U.S.C. §1114.  Defendants' use in the context of advertising is likely to cause confusion, mistake and deception of the public as to the identity and origin of Innovate Media's products, goods and services, causing irreparable harm to Innovate Media for which there is no adequate remedy at law.

69.   Defendants' acts have been willful and in conscious disregard of the trademark rights of Innovate Media.

70.   Innovate Media has been damaged by, and Defendants have profited from, Defendants' wrongful conduct in an amount to be proven at trial.

71.   Innovate Media is entitled to damages and enhanced damages in an amount to be proven at trial.

72.   Monetary relief alone is not adequate to address fully the irreparable injury that Defendants' illegal actions have caused and will continue to cause Innovate Media if not enjoined.  Innovate Media is therefore entitled to preliminary and permanent injunctive relief to stop Defendants' trademark infringement.

73.   This is an exceptional case and Innovate Media is entitled to attorneys fees pursuant to 15 U.S.C. §1117 (a).

## SECOND CAUSE OF ACTION

### False Designation of Origin and Unfair Competition

### in Violation of 15 U.S.C. §1125(a)

### Against All Defendants

74.   Innovate Media repeats and realleges each and every allegation contained in paragraphs 1 to 73, inclusive, and incorporates them by reference as though fully and completely set forth herein.

0100-9999 / 130026.1

15

COMPLAINT

1    75.    By the aforesaid acts, Defendants have knowingly and intentionally

2  misrepresented and falsely designated to the public the source and origin of their

3  products, goods and services in violation of 15 U.S.C. §1125(a).  Defendants' use in

4  the context of advertising is likely to cause confusion, or to cause mistake, or to

5  deceive consumers as to the affiliation, connection or association of Innovate

6  Media's products, goods and services, or to deceive consumers as to the origin,

7  sponsorship or approval or Innovate Media's products, goods and services.

8    76.    Innovate Media has been damaged by, and Defendants have profited

9  from, Defendants' wrongful conduct in an amount to be proven at trial.

10    77.    Innovate Media is entitled to damages and enhanced damages in an

11  amount to be proven at trial.

12    78.    Monetary relief alone is not adequate to address fully the irreparable

13  injury that Defendants' illegal actions have caused and will continue to cause

14  Innovate Media if not enjoined.  Innovate Media is therefore entitled to preliminary

15  and permanent injunctive relief to stop Defendants' unfair competition.

16    79.    This is an exceptional case and Innovate Media is entitled to attorneys

17  fees pursuant to 15 U.S.C. §1117 (a).

18

19                    **THIRD CAUSE OF ACTION**

20        **Unfair Competition in Violation of Cal. Bus. & Prof. Code §17200**

21                        **Against All Defendants**

22    80.    Innovate Media repeats and realleges each and every allegation

23  contained in paragraphs 1 to 79, inclusive, and incorporates them by reference as

24  though fully and completely set forth herein.

25    81.    Defendants' aforesaid acts in using Innovate Media's "iAds" marks

26  have deceived, misled and confused the public generally, and specifically Innovate

27  Media's clients and potential clients, and will continue to do so if such use

28  continues.

COMPLAINT

1    82.    Defendants have engaged in conduct in bad faith that constitutes unfair,

2  unlawful and fraudulent business practices within the meaning of California

3  Business and Professions Code §17200, causing harm and irreparable injury to

4  Innovate Media.

5    83.    Pursuant to California Business and Professions Code §17203,

6  Innovate Media is entitled to preliminary and permanent injunctive relief, whereby

7  Defendants are ordered to cease and desist from the wrongful conduct alleged

8  herein.

9                    **FOURTH CAUSE OF ACTION**

10          **Trademark Infringement Under California Common Law**

11                       **Against All Defendants**

12    84.    Innovate Media repeats and realleges each and every allegation

13  contained in paragraphs 1 to 83, inclusive, and incorporates them by reference as

14  though fully and completely set forth herein.

15    85.    Innovate Media has developed substantial common law trademark

16  rights in the iAds marks under California law.

17    86.    By its aforesaid acts, Defendants have infringed the iAds marks by

18  using confusingly similar marks in commerce in the State of California in a way that

19  has caused and likely will continue to cause consumer confusion as to Innovate

20  Media's association with, affiliation with, or sponsorship of Defendants and their

21  products, goods and services.

22    87.    Defendants' acts have been willful and in conscious disregard of the

23  trademark rights of Innovate Media.

24    88.    Innovate Media has been damaged by, and Defendants have profited

25  from, Defendants' wrongful conduct in an amount to be proven at trial.

26    89.    Innovate Media is entitled to damages and enhanced damages in

27  amounts to be proven at trial.

28

0100-9999 / 130026.1

COMPLAINT

90.    Monetary relief alone, however, is not adequate to address fully the irreparable injury that Defendants' illegal actions have caused and will continue to cause Innovate Media if not enjoined.  Innovate Media is therefore entitled to preliminary and permanent injunctive relief to stop Defendants' trademark infringement under California common law.

## FIFTH CAUSE OF ACTION

**Injury to Business Reputation Under California Common Law**

**Against All Defendants**

91.    Innovate Media repeats and realleges each and every allegation contained in paragraphs 1 to 90, inclusive, and incorporates them by reference as though fully and completely set forth herein.

92.    Defendants' use of the mark "iAd" is confusingly similar to and constitutes infringement of Innovate Media's "iAds" marks.  Defendants' use injures Innovate Media's business reputation because consumers will believe that Innovate Media is affiliated with or related to or has the approval of Defendant Apple Inc., and any adverse reaction by the public to Defendant and the quality of its products and the nature of its business will injure the business reputation of Innovate Media.

93.    Defendants have engaged in conduct in bad faith that constitutes unfair, unlawful and fraudulent business practices under the common law of the State of California, causing harm and irreparable injury to Innovate Media.

94.    Innovate Media has no adequate remedy at law to address fully this irreparable injury that Defendants' illegal actions have caused and will continue to cause Innovate Media if not enjoined.  Innovate Media is therefore entitled to preliminary and permanent injunctive relief to stop Defendants' use of the mark "iAd."

COMPLAINT

## PRAYER FOR RELIEF

1. That Defendant Apple Inc., and its agents, officers, employees, representatives, successors, assigns, attorneys and all other persons acting in concert with them, be preliminarily and permanently enjoined from directly or indirectly:

(a) Using the "iAd" mark or any mark that is confusingly similar to Innovate Media's marks "iAds";

(b) Committing any other acts likely to infringe or dilute Innovate Media's marks;

2. That all of Defendants' advertising and printed forms bearing the "iAd" mark or any other marks that are confusingly similar to the "iAds" mark or any variation thereof be delivered up and destroyed;

3. That Innovate Media recover all of its actual damages;

4. That Innovate Media recover all profits derived by Defendants from its acts of trademark infringement, false designation of origin and unfair competition;

5. That Innovate Media recover its interest and costs of suit incurred in this action and its reasonable attorneys' fees as authorized by law;

6. That Innovate Media recover enhanced damages for willful trademark infringement, including the trebling of Defendants' profits and Innovate Media's actual damages; and

8. That the Court award such other and further relief as it deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff Innovate Media hereby requests a trial by jury of all issues so triable.

19

COMPLAINT

1    Dated: May 21, 2010           Respectfully submitted,

2

3                                       **ZUBER & TAILLIEU LLP**
                                      YURI MIKULKA

4                                       OLIVIER A. TAILLIEU
                                      LAURA D. CASTNER

5                                       SARAH S. BROOKS

6

7                     By: _____

8                                       Attorneys for Plaintiff INNOVATE
                                      MEDIA GROUP, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

# EXHIBIT A

**Int. Cl.: 41**

**Prior U.S. Cls.: 100, 101 and 107**

**United States Patent and Trademark Office**

Reg. No. 3,515,183
Registered Oct. 14, 2008

## SERVICE MARK
### PRINCIPAL REGISTER

# iAds

INNOVATE MEDIA GROUP, LLC (CALIFORNIA LIMITED LIABILITY COMPANY)
3199 A-3 AIRPORT LOOP ROAD
COSTA MESA, CA 92626

FOR: PRODUCTION OF VIDEO AND CREATION OF VISUAL EFFECTS AND GRAPHICS FOR OTHERS FOR USE ON WEBSITES, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 8-1-2006; IN COMMERCE 8-1-2006.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 77-313,277, FILED 10-25-2007.

SANDRA MANIOS, EXAMINING ATTORNEY

Innovate Group v. Apple, Inc.
000021

# EXHIBIT B

Int. Cl.: 38

Prior U.S. Cls.: 100, 101 and 104

## United States Patent and Trademark Office

Reg. No. 3,515,184
Registered Oct. 14, 2008

### SERVICE MARK
### PRINCIPAL REGISTER

# iAds

INNOVATE MEDIA GROUP, LLC (CALIFORNIA
   LIMITED LIABILITY COMPANY)
3199 A-3 AIRPORT LOOP ROAD
COSTA MESA, CA 92626

   FOR: TRANSMISSION OF SOUND, VIDEO AND
INFORMATION OVER THE INTERNET USING
VIDEO FLASH OVERLAY TECHNOLOGY, IN
CLASS 38 (U.S. CLS. 100, 101 AND 104).

   FIRST USE 8-1-2006; IN COMMERCE 8-1-2006.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

SER. NO. 77-313,325, FILED 10-25-2007.

SANDRA MANIOS, EXAMINING ATTORNEY

Innovate Group v. Apple, Inc.
000022

# EXHIBIT C

 **Canadian Intellectual Property Office**
An Agency of
Industry Canada

**Office de la propriété intellectuelle du Canada**
Un organisme
d'Industrie Canada

**Canada**

Home > Canadian Trade-marks Database> Basic Search

⇨ Search Page

# CANADIAN TRADE-MARK DATA

\*\*\* Note Data on trade-marks is shown in the official language in which it was submitted.

The database was last updated on: 2010-05-11

**APPLICATION NUMBER:**
1475581

**STATUS:**

**FILED:**

**FORMALIZED:**

**APPLICANT:**
Apple Inc.
1 Infinite Loop
Cupertino, CA 95014
UNITED STATES OF AMERICA
 AGENT:
 BAKER & MCKENZIE LLP
 BROOKFIELD PLACE
 181 BAY STREET, SUITE 2100
 P.O. BOX 874
 TORONTO
 ONTARIO M5J 2T3
 REPRESENTATIVE FOR SERVICE:
 BAKER & MCKENZIE LLP
 BROOKFIELD PLACE
 181 BAY STREET, SUITE 2100
 P.O. BOX 874
 TORONTO
 ONTARIO M5J 2T3

**REGISTRATION NUMBER:**
not registered
 FORMALIZED
 2010-04-06
 2010-04-08

**TRADE-MARK:**

# IAD

**INDEX HEADINGS:**
IAD

**WARES:**
(1) Computers, computer peripheral devices, computer terminals; computer hardware; computer gaming machines, microprocessors, memory boards, monitors, displays, keyboards, cables, modems, printers, disk drives, adapters, adapter cards, connectors and drivers; blank computer storage media; magnetic data carriers; computer software; computer software for authoring, downloading, transmitting, receiving, editing, extracting, encoding, decoding, displaying, storing and organizing text, graphics, images, and electronic publications; computer software and firmware, namely, operating system programs, data synchronization programs, and application development tool programs for personal and handheld computers; computer hardware and software for providing integrated telephone communication with computerized global information networks; pre-recorded computer programs for personal information management, database management software, character recognition software, telephony management software, electronic mail and messaging software, paging software, mobile telephone software; database synchronization software, computer programs for accessing, browsing and

searching online databases, computer software for the redirection of messages, Internet e-mail, and/or other data to one or more electronic handheld devices from a data store on or associated with a personal computer or a server; computer software for the synchronization of data between a remote station or device and a fixed or remote station or device; downloadable electronic publications in the nature of books, plays, pamphlets, brochures, newsletters, journals, magazines, and periodicals on a wide range of topics of general interest; handheld digital electronic devices and software related thereto; MP3 and other digital format audio players; hand held computers, tablet computers, personal digital assistants, electronic organizers, electronic notepads; mobile digital electronic devices, global positioning system (GPS) devices, telephones; handheld and mobile digital electronic devices for the sending and receiving of telephone calls, faxes, electronic mail, and other digital data; cordless telephones; mobile telephones; parts and accessories for mobile telephones; facsimile machines, answering machines, cameras, videophones, telephone-based information retrieval software and hardware; electronic handheld units for the wireless receipt, storage and/or transmission of data and messages, and electronic devices that enable the user to keep track of or manage personal information; electronic communication equipment and instruments; telecommunications apparatus and instruments; fonts, typefaces, type designs and symbols in the form of recorded data; chips, discs and tapes bearing or for recording computer programs and software; random access memory, read only memory; solid state memory apparatus; computer and electronic games; user manuals in electronically readable, machine readable or computer readable form for use with, and sold as a unit with, all the aforementioned goods; apparatus for data storage; hard drives; miniature hard disk drive storage units; audio video discs, CD-ROMs, and digital versatile discs; mouse pads; batteries; rechargeable batteries; chargers; chargers for electric batteries; headphones; stereo headphones; in-ear headphones; stereo speakers; audio speakers; audio speakers for home; monitor speakers; speakers for computers; personal stereo speaker apparatus; radio receivers, amplifiers, sound recording and reproducing apparatus, electric phonographs, record players, high fidelity stereo apparatus, tape recorders and reproducing apparatus, loudspeakers, multiple speaker units, microphones; digital audio and video devices; audio cassette recorders and players, video cassette recorders and players, compact disc players, digital versatile disc recorders and players, digital audio tape recorders and players; digital music and/or video players; radios; video cameras; audio, video, and digital mixers; radio transmitters; car audio apparatus; computer equipment for use with all of the aforesaid goods; electronic apparatus with multimedia functions for use with all of the aforesaid goods; electronic apparatus with interactive functions for use with all of the aforesaid goods; accessories, parts, fittings, and testing apparatus for all of the aforesaid goods; parts and fittings for all the aforesaid goods; covers, bags and cases adapted or shaped to contain all of the aforesaid goods, made of leather, imitations of leather, cloth, or textile materials.
(2) Paper, cardboard and goods made from these materials, not included in other classes; printed matter; book binding material; photographs; stationery; stickers; artists' materials; paint brushes; typewriters and office requisites (except furniture); instructional and teaching material (except apparatus); plastic materials for packaging (not included in other classes); advertising materials; printers' type; printing blocks; printed publications; periodicals; books; magazines; newsletters; brochures; booklets; pamphlets; manuals; journals; leaflets; greeting cards; advertising and promotional material; catalogues relating to computer software; computer brochures; computer handbooks; computer hardware publications; computer hardware reference manuals; computer hardware users guide; computer instruction manuals; computer manuals; publications relating to technology, digital technology and gadgets; catalogues relating to musical apparatus and instruments; music books; music instruction manuals; music magazines; excluding adhesives, adhesive tape and sheets.
(3) Toys; games and playthings; playing cards; electronic hand-held game units; musical toys, games and playthings; toy audio apparatus; toy musical boxes; toy musical instruments; toy record players for playing tunes and cassettes; musical games; battery operated toys; electronic toys; electric computer games, other than those adapted for use with television receivers; electrical and electronic amusement apparatus (automatic, coin/counter freed); electronic games being automatic, coin-freed or counter-freed (other than those adapted for use with television receivers); hand-held electronic games and apparatus (other than those adapted for use with television receiver only); video games other than those adapted for use with television receivers only; automatic and coin-operated amusement machines; computer game apparatus other than coin operated or those adapted for use with television receivers; video output toys and games; electronically operated toys; interactive computer toys and games; musical toys and games; stand alone video game machines incorporating a means of display; toy handheld electronic devices; toy computers (not working); toy mobile telephones (not working); parts and fittings for all the aforesaid goods.
**SERVICES:**
(1) Business management; business administration; business consulting services; providing office functions; advertising agency services; advertising, marketing, and promotion services; advertising and marketing consultation; sales promotion services; promoting the goods and services of others; conducting market research; analysis of advertising response and market research; design, creation, preparation, production, and

Innovate Group v. Apple, Inc.
000024

dissemination of advertisements and advertising material for others; media planning services; administration of consumer loyalty programs; arranging and conducting incentive rewards programs to promote the sale of goods and services; computerized database and file management; data processing services; computerized data storage and retrieval services; computerized data storage and retrieval services for text, data, image, audio, video, and multimedia content; creating indexes of information, sites and other resources available on global computer networks and other electronic and communications networks for others; searching, browsing and retrieving information, sites, and other resources available on global computer networks and other electronic and communications networks for others; organizing content of information provided over a global computer network and other electronic and communications networks according to user preferences; providing an online searchable database of text, data, image, audio, video, and multimedia content; providing business and commercial information over computer networks and global communication networks; business services, namely, providing computer databases regarding the purchase and sale of a wide variety of products and services of others; business services, namely, dissemination of advertising for others via computer networks and global communication networks; compilations of directories for publishing on the Internet and other electronic, computer and communications networks; retail store and online retail store services; retail store services provided via the Internet and other computer, electronic and communications networks; retail store services in the field of books, magazines, periodicals, newsletters, journals and other publications on a wide range of topics of general interest, provided via the Internet and other computer, electronic and communications networks; retail store services in the field of entertainment featuring movies, television programs, sporting events, musical works, and audio and audiovisual works, via the Internet and other computer, electronic and communications networks; retail store services featuring computer, electronic and entertainment products, telecommunications apparatus, mobile phones, handheld mobile digital electronic devices, and other consumer electronics, computer software, and accessories, peripherals, and carrying cases for such products, via the Internet and other computer, electronic and communications networks; product demonstrations provided in-store and via global communications networks and other electronic and communications networks; subscription services, namely, providing subscriptions to text, data, image, audio, video, and multimedia content, provided via the Internet and other electronic and communications networks; downloadable pre-recorded text, data, image, audio, video, and multimedia content for a fee or pre-paid subscription, provided via the Internet and other electronic and communications networks; arranging and conducting of commercial, trade and business conferences, shows, and exhibitions; information, advisory and consultancy services relating to all the aforesaid.
(2) Educational and entertainment services; sporting and cultural activities; computer-based and computer-assisted educational, teaching, and training services; digital imaging services; entertainment and educational services, namely, providing text, video, audio, and multimedia materials; entertainment services, namely, providing computer games; entertainment and educational services, namely, providing electronic books, magazines, newspapers, journals, periodicals, and other publications; entertainment and educational services, namely, providing information, databases, directories, and podcasts in the fields of entertainment, advertising, news, current events, history, sports, games, the media, cultural events and activities, hobbies, publications, technology, and other topics; entertainment and educational services, namely, live performances, sporting events, cultural events, and lectures; entertainment and education services, namely, organizing and conducting exhibitions, displays, exhibits, workshops, seminars, training, and conferences; information, advisory and consultancy services relating to all the aforesaid.
(3) Application service provider (ASP) services featuring computer software; application service provider (ASP) services featuring software for authoring, downloading, transmitting, receiving, editing, extracting, encoding, decoding, displaying, storing and organizing text, graphics, images, and electronic publications; scientific and technological services and research and design relating thereto; industrial analysis and research services; design and development of computer hardware and software; computer hardware and software consulting services; rental of computer hardware and software apparatus and equipment; multimedia and audio-visual software consulting services; computer programming; support and consultation services for developing computer systems, databases and applications; graphic design for the compilation of web pages on the Internet; information relating to computer hardware or software provided on-line from a global computer network or the Internet; creating and maintaining web-sites; hosting the web-sites of others; providing search engines for obtaining data via communications networks; application service provider (ASP) services featuring software for use in connection with online music subscription service, software that enables users to play and program music and entertainment-related audio, video, text and multimedia content, and software featuring musical sound recordings, entertainment-related audio, video, text and multimedia content; providing temporary internet access to use on-line non-downloadable software to enable users to program audio, video, text and other multimedia content, including music, concerts, videos, radio, television, news, sports, games, cultural events, and entertainment-related programs; providing search engines for obtaining data on a global computer network; information,

Innovate Group v. Apple, Inc.
000025

advisory and consultancy services relating to all the aforesaid; operating search engines; computer consulting and support services for scanning information into computer discs; creating indexes of online information, sites and other resources available on global computer networks for others; providing user access to the Internet (service providers).

**CLAIMS:**
Proposed Use in CANADA.

| ACTION | DATE | BF | COMMENTS |
|---|---|---|---|
| Filed | 06 April 2010 | | |
| Created | 06 April 2010 | | |
| Formalized | 08 April 2010 | | |
| Translation Requested | 13 April 2010 | 12 June 2010 | |

[ Back to search ] [ Back ]

Last updated 2010-05-11

Innovate Group v. Apple, Inc.
000026

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| INNOVATE MEDIA GROUP, LLC, a California limited liability company | APPLE INC., a California Corporation; and DOES 1-10, inclusive, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| ZUBER & TAILLIEU LLP - Olivier A. Taillieu, Yuri Mikulka<br>10866 Wilshire Boulevard, Suite 300<br>Los Angeles, California  90024, (310) 807-9700 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No        ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. 1114(1), 15 U.S.C. 1125 (A) – trademark infringement, false designation of origin, unfair competition

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☒ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | IMMIGRATION | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

## CV10-3866

FOR OFFICE USE ONLY:     Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
  ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Santa Clara |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Laura A Castner_   Date _5/21/10_

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |